■ JEAN FIORENTINO, as Administratrix of the Estate of MICHAEL FIORENTINO, Deceased, Respondent, v. H. LESLIE WENGER et al., Appellants.— In a malpractice action against a physician and a hospital to recover damages for the wrongful death and conscious pain and suffering of plaintiff's decedent, defendants appeal from a judgment of the Supreme Court, Nassau County, entered June 9, 1965, upon a jury verdict in favor of plaintiff against each of them. The amount of the verdict was reduced upon plaintiff's stipulation after the conditional grant of defendants' motion to set aside the verdict. Judgment affirmed, with costs. It was virtually undisputed that plaintiff's decedent, her 14-year-old

son, was caused to suffer an exsanguinating hemorrhage as the result of an operation performed upon him by the defendant physician at the defendant hospital for the purpose of correcting the decedent's scoliotic condition. The surgery performed was not the generally accepted medical treatment in the community for scoliosis, but was a procedure utilized in this country only by the defendant physician, who had first developed it five years before the operation and death in the case at bar. It was also virtually undisputed that over the course of those 5 years, in at least 5 of the 35 instances in which the procedure was utilized by the defendant physician prior to the operation here involved, there had been unexpected and untoward results. Approximately one year before the operation herein, one of the defendant physician's patients had been caused to suffer an immediate paralysis when one of the screws inserted into her vertebral column to anchor the steel bar or "spinal jack" (which was intended to support and hold the spine in a straight position) pierced the spinal canal and severed the spinal cord. As a result, the hospital where that operation had been performed withdrew permission for the defendant physician's use of its facilities for this type of procedure. We are of the opinion that, under the facts and circumstances disclosed by this record, including the fact that no immediate emergency existed, the defendant physician was obligated to make a disclosure to the parents of his infant patient that the procedure he proposed was novel and unorthodox and that there were risks incident to or possible in its use (*Di Rosse* v. *Wein*, 24 A D 2d 510, mot. for lv. to app. den., 16 N Y 2d 487). We are also of the opinion that, knowing the nature of the proposed operation, the history of its utilization by the defendant physician, and the fact that it had not been recognized by the medical profession in the community, or in the nation, as an accepted method for the correction of scoliosis, the defendant hospital was obligated to ascertain that the physician had made such a disclosure before permitting the operation to take place. Ughetta, Acting P. J., Christ, Hill and Benjamin, JJ., concur; Rabin, J., concurs with the majority decision insofar as it affirms the judgment, as reduced, against the defendant Wenger, but dissents with respect to the affirmance of the judgment as against defendant Doctors Hospital; and, with respect thereto, votes to reverse the judgment and dismiss the complaint, with the following memorandum: In my opinion, under the circumstances here disclosed, the defendant hospital was under no duty independently to obtain another consent from the parents of the infant, a private patient, who submitted to surgery by the defendant physician, a diplomate of the American Board of Surgery and a specialist in orthopedic surgery, where that physician had already obtained such consent. It was not the obligation of defendant hospital to go behind such consent to ascertain whether, as charged by the Trial Justice, an informed consent had been given. The defendant physician was not, in this case, the servant or agent of defendant hospital, and in view of his explanation to the defendant hospital that he had worked out a new technique to overcome the one prior instance where a patient, undergoing this type of operation, had developed paralysis, the defendant hospital was free to assume, particularly in light of the fact that he had performed 34 other such procedures without such incident, that a physician and surgeon in good standing had competently obtained his current patient's consent. Indeed, discussion by the hospital of the matter of consent might have constituted an invasion of the confidential relationship existing between the patient and his doctor. Apart from the claim of lack of an informed consent as the sole ground for liability on the part of the defendant hospital, it must be noted that there was no claim of negligence upon the part of the defendant hospital through the use of its facilities or the activities of its personnel. Neither did the defendant hospital hold out the defendant physician as one qualified to

perform this particular operation. Under all the facts, to hold the defendant hospital responsible imposes upon the hospital, unsupported by any authority, an additional obligation which in effect renders the hospital a guarantor of the conduct of all physicians who utilize the facilities of the hospital, regardless of whether or not they are part of the hospital personnel.